UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RICHARD J. PICCIANO,

                       Plaintiff,

    VS

STEPHAN McLOUGHLIN,

                       Defendant.             No. 07-CV-781, NAM/GHL

_____


## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


GUTTMAN & WALLACE
Attorneys for Plaintiff, Richard J. Picciano
411 North Tioga Street
Ithaca, NY 14850
Tel. No.:  (607) 272-2102



RICHARD M. WALLACE, ESQ.
HILARY E. WILD

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES....................................................................ii

PRELIMINARY STATEMENT.............................................................1

STATEMENT OF FACTS....................................................................2

STANDARD FOR SUMMARY JUDGMENT..........................................2

POINT I
     MR. PICCIANO HAS ESTABLISHED A GENUINE ISSUE OF
     MATERIAL FACT AS TO WHETHER THE DEFENDANT
     VIOLATED MR. PICCIANO'S DUE PROCESS RIGHTS AND
     USED UNCONSTITUTIONAL EXCESSIVE FORCE DURING
     THE ARREST OF MR. PICCIANO...........................................3
          A. The defendant lacked probable cause to arrest Mr.
             Picciano for skateboarding.........................................3
          B. Even if Mr. Picciano was illegally skateboarding,
             the defendant was not required to arrest Mr. Picciano.............4
          C. Genuine issues of material fact exist as to whether
             the defendant had probable cause to arrest Mr. Picciano
             for resisting arrest...........................................6
          D. Even if the defendant was authorized to arrest
             Mr. Picciano, the force used by the defendant against
             Mr. Picciano was excessive under the circumstances.............7
          E. Mr. Picciano has alleged sufficient damages under
             Section 1983.............................................12

POINT II
     THE DEFENDANT IS NOT ENTITLED TO QUALIFIED
     IMMUNITY BECAUSE A FACTUAL DISPUTE EXISTS AS TO
     WHETHER THE DEFENDANT EXERCISED EXCESSIVE
     FORCE AGAINST MR. PICCIANO...........................................14

POINT III
     PUNITIVE DAMAGES ARE WARRANTED BECAUSE THE
     DEFENDANT ACTED WITH A RECKLESS OR CALLOUS
     INDIFFERENCE TO MR. PICCIANO'S FEDERALLY-
     PROTECTED RIGHTS...........................................16

CONCLUSION..........................................................................19

## TABLE OF AUTHORITIES

<u>CASES:</u>                                                          <u>PAGE NO.</u>

<u>Ahern v. City of Syracuse</u>
    411 F.Supp.2d 132 (N.D.N.Y. 2006) …………………………………8, 9, 10,
                                          11, 12

<u>American Land Title Ass'n v. Clarke</u>
    968 F.2d 150 (2d Cir.1992) ………………………………………….5

<u>Bellows v. Dainack</u>
    555 F.2d 1105 (2d Cir. 1977) …………………………………....8, 13

<u>Breen v. Garrison</u>
    169 F.3d 152 (2d Cir. 1999)..……………………………….....9, 10

<u>City of Newport v. Fact Concerts, Inc.</u>
    453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ……………16

<u>Curry v. City of Syracuse</u>
    316 F.3d 324 (2d Cir. 2003) ……………………………………2, 8, 14, 15

<u>Fera v. City of Albany</u>
    --- F. Supp. 2d -----
    2008 WL 2949280 (N.D.N.Y. 2008) ……………………..……...……14

<u>First Nat'l. Bank of Ariz. v. Cities Serv. Co.</u>
    391 U.S. 253, 88 S. Ct. 1575,
    20 L.Ed.2d 569 (1968) …………………………………………..…….2

<u>Gomez v. City of New York</u>
    2008 WL 38333811 (S.D.N.Y. 2008) ……………………..…....…15

<u>Graham v. Connor</u>
    490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed 2d 443 (1989) ……………..8, 11

<u>Hunt v. Cromartie</u>
    526 U.S. 541, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999) ……….…..…2

<u>Lazaratos v. Ruiz,</u>
    2003 WL 22283832 (S.D.N.Y. 2003) …………………….…..……16, 17

<u>Mickle v. Morin</u>
    297 F.3d 114, 53 Fed.R.Serv.3d 245 (2d Cir. 2002) …………….……14

Moore v. Comesanas
 32 F.3d 670 (2d Cir.1994) ..................................................3

Phelan v. Torres
 2005 WL 4655382 (E.D.N.Y. 2005) .........................................16

Posr v. Court Officer Shield No. 207
 180 F.3d 409 (2d Cir. 1999) ..............................................3

Rincon v. City of New York
 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. 2005) ..............................12, 13

Robison v. Via
 821 F.2d 913 (2d Cir. 1987) ...........................................8, 12, 13,
                               14

Smith v. Wade
 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) .....................16

Swift v. Mauro
 2008 WL 207793 (N.D.N.Y. 2008) .......................................15

Thomas v. Roach
 165 F.3d 137 (2d Cir. 1999) ...........................................14

U.S. v. Moran
 236 F.2d 361 (2d Cir.1956) ............................................5

U.S. v. Torres-Echavarria
 129 F.3d 692 (2d Cir. 1997) ...........................................5

Washpon v. Parr
 561 F.Supp.2d 394 (S.D.N.Y. 2008) ....................................4, 7

Weyant v. Okst
 101 F.3d 845 (2d Cir. 1996) ...........................................3, 7

**FEDERAL STATUTES:**          **PAGE NO.**

F.R.C.P. 56(c)..........................................................1, 2

42 U.S.C. § 1983.......................................................1, 7, 8,
                            9, 13, 16

**STATE STATUTES:**

N.Y. Penal Law § 205.30................................................6

**LOCAL STATUTES**                                    **PAGE NO.**

City of Auburn Municipal Code §1-18…………………………………………..4, 5, 6

City of Auburn Municipal Code § 234-16…………………………………….4, 5, 6

## PRELIMINARY STATEMENT

Plaintiff Richard J. Picciano commenced this action in July of 2007 by filing a summons and complaint against the defendant Stephan McLoughlin, an officer with the Auburn City Police Department.  The complaint arises from the defendant's conduct on August 4, 2004, when the defendant arrested Mr. Picciano for allegedly illegally skateboarding, threw Mr. Picciano to the ground, dug a knee into Mr. Picciano's back, pepper-sprayed and punched Mr. Picciano's face, and slammed Mr. Picciano against his patrol vehicle.  Mr. Picciano f this lawsuit under 42 U.S.C. § 1983, claiming that the defendant's actions constituted unconstitutional excessive force and violated his due process rights.

The defendant brought a motion on August 18, 2008, seeking an order pursuant to F.R.C.P. 56(c) granting summary judgment.  Mr. Picciano opposes the motion because genuine issues of material fact necessitate a jury trial.

## STATEMENT OF FACTS

The relevant facts are set forth in detail in the accompanying affidavits and Counterstatement of Material Facts.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment under F.R.C.P. 56(c) is appropriate only "if there are no genuine issues of fact and the movant is entitled to judgment as a matter of law." Curry v. City of Syracuse, 316 F.3d 324, 329 (2d Cir. 2003) (citation omitted).  The party opposing summary judgment is not required to prove that the issue of material fact should be resolved conclusively in that party's favor; "rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id., quoting First Nat'l. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968).  "Further, 'in ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id., quoting Hunt v. Cromartie, 526 U.S. 541, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999).  "If…there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Id. (citation omitted).  "It is well established that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Id. at 333 (citation and quotation marks omitted).

As set forth fully herein, summary judgment is not appropriate because Mr. Picciano has come forward with evidence that the defendant violated his due process rights and used unconstitutional excessive force against him.

<u>POINT I</u>

<u>**MR. PICCIANO HAS ESTABLISHED A GENUINE ISSUE
OF MATERIAL FACT AS TO WHETHER THE
DEFENDANT VIOLATED MR. PICCIANO'S DUE
PROCESS RIGHTS AND USED UNCONSTITUTIONAL
EXCESSIVE FORCE DURING THE ARREST OF MR.
PICCIANO.**</u>

The defendant argues that Mr. Picciano's due process rights were not violated and that he did not employ excessive force against Mr. Picciano because "his actions were reasonable under the facts then and there existing at the time of Mr. Picciano's arrest." (Defendant's Memorandum of Law p. 3). If Mr. Picciano's version of the facts is adopted, however, then the defendant's actions were patently unreasonable. This is a question for the jury to decide, not for the Court to dispose of on a motion for summary judgment.

A.     **The defendant lacked probable cause to arrest Mr. Picciano for skateboarding.**

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir.1996). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers…or may require a trial if the facts are in dispute…."<u>Id.</u> (*citing* <u>Moore v. Comesanas</u>, 32 F.3d 670, 673 (2d Cir.1994) (where question of whether arresting officer had probable cause was "predominantly factual in nature, [it] was properly presented to the jury")) (other citations omitted). Summary judgment is precluded where, accepting the facts in the light most favorable to the plaintiff, the elements of the offense for which the plaintiff was arrested are not met. *See, e.g.*, <u>Posr v. Court Officer</u>

Shield No. 207, 180 F.3d 409, 415 (2d Cir. 1999); Washpon v. Parr, 561 F.Supp.2d 394, 402

(S.D.N.Y. 2008).

The defendant submits, "[T]he deposition testimony provided in connection with this

motion demonstrates unequivocally that the defendant Officer Stephan McLoughlin had probable

cause on August 4, 2004 to arrest the plaintiff of the charge of skateboarding in a prohibiting area

and resisting arrest." (Defendant's Memorandum of Law p. 5).  The deposition testimony does

nothing of the sort.  Mr. Picciano and each of the four non-party witnesses consistently testified

that Mr. Picciano was not riding his skateboard on the steps of Auburn City Hall before the

defendant arrived; rather, Mr. Picciano was sitting down on a step with one or both of his feet

resting on his skateboard.  (Ex. "2" 50-h Transcript, p. 14; Ex. "G" Picciano EBT, pp. 44, 46, and

47; Ex. "I" Smart EBT, p. 10; Ex. "J" E. Rizzo EBT, pp. 8, 9; Ex. "K" M. Rizzo EBT, pp. 11, 12,

13; Ex. "M" Norcross EBT, pp. 11, 13).

Accepting the facts in the light most favorable to Mr. Picciano, the defendant lacked

probable cause to arrest Mr. Picciano because the elements of the offense of skateboarding in a

prohibited zone were not met.  See, e.g., Posr v. Court Officer Shield No. 207, 180 F.3d at 415;

Washpon v. Parr, 561 F.Supp.2d at 402.  At no point did Mr. Picciano "ride" his skateboard on

the steps of City Hall as forbidden by the Code of the City of Auburn.

**B.      Even if Mr. Picciano was illegally skateboarding, the defendant was not**

**required to arrest Mr. Picciano.**

The defendant argues that Section 1-18 of the Municipal Code of the City of Auburn

"[c]learly…would authorize the arrest of a skateboarder…." (Defendant's Memorandum of Law

p. 5).  Mr. Picciano does not dispute that Section 234-16 of the Municipal Code of the City of

Auburn forbids skateboarding in certain portions of the City, including the steps of City Hall.

Mr. Picciano also understands that Section 1-18 of the Municipal Code of the City of Auburn contains a General Penalty provision, which states, "*Unless otherwise specifically provided*, the violation of any chapter, rule or regulation…shall be deemed a violation…punishable by a fine not to exceed $250 or imprisonment of not more than 15 days, or both such fine and imprisonment…. (Ex. "A" to Defendant's Memorandum of Law) (emphasis added).   However, Mr. Picciano respectfully submits that the skateboarding regulation, unlike each of the other provisions of the Public Conduct chapter of the Code of the City Code, *specifically provides* its own penalty scheme, making Section 1-18 of the Municipal Code inapplicable.   Section 234-16(E) provides:

> Whenever a police officer has probable cause to believe a skateboard was used or is being used in violation of this section, the officer may seize the skateboard. Any person authorized to enforce ordinances may issue a ticket to any person in violation of this section. Any person to whom a ticket is issued may, within eight days of receipt, pay $25 in lieu of contesting the violation and in lieu of any other fines or penalties. For a second offense within the preceding year, the fine will be $50. For a third offense within the preceding year, the fine will be $100. Upon timely payment under this subsection, the Police Department shall make any skateboard seized under this section available for return to the offender, pursuant to the procedures established by the police Department. (Ex. "3" to Wallace Afft. at p. 4).

"The operative principle of statutory construction is that a specific provision takes precedence over a more general provision."  U.S. v. Torres-Echavarria, 129 F.3d 692, 699 n. 3 (2d Cir. 1997), *cert. denied*, Torres-Echavarria v. U.S., 522 U.S.1153 (1998) (*citing* U.S. v. Moran, 236 F.2d 361, 363 (2d Cir.1956)); American Land Title Ass'n v. Clarke, 968 F.2d 150, 157 (2d Cir.1992) (stating "where two statutes conflict, the statute that addresses the matter under consideration in specific terms controls over one that does so in a general manner, unless of course [the legislature] has manifested a clear intent to the contrary").  Section 234-16 sets forth a detailed procedure for a code enforcement officer to follow upon discovering that a

person has skateboarded in a prohibited zone.  The code enforcement officer has the limited authority to "seize the skateboard" and "issue a ticket."  The explicit terms of Section 234-16 control over the general terms of Section 1-18.

**C.   Genuine issues of material fact exist as to whether the defendant had probable cause to arrest Mr. Picciano for resisting arrest.**

The defendant asserts that "factual circumstances as testified to by the defendant establish that probable cause existed at the time of the incident to justify the plaintiff's arrest" for resisting arrest.  (Defendant's Memorandum of Law, p. 7).  New York Penal Law Section 205.30 provides, "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.  Resisting arrest is a class A misdemeanor."  Mr. Picciano denies that he attempted to prevent the defendant from effecting an authorized arrest.  As explained in Parts II(A) and (B) *supra*, the plaintiff's arrest for skateboarding in a prohibited zone was not authorized.  Additionally, even if the arrest was authorized, summary judgment is precluded because the factual circumstances as testified to by Mr. Picciano establish at least a genuine issue of material fact as to whether Mr. Picciano's intentionally resisted arrest.

Mr. Picciano's Counterstatement of Facts and Affidavit in Opposition to Summary Judgment reveal an array of factual issues surrounding the defendant's alleged resistance to arrest.  For example, there are questions about when and how the defendant told Mr. Picciano to put his hands behind his back and when and how Mr. Picciano reacted to that order.  (See Counterstatement of Facts ¶¶ 35-50).  Another of the many points of dispute is whether Mr. Picciano attempted to walk away from the defendant after the defendant advised Mr. Picciano that he was under arrest. The defendant states, "I instructed Mr. Picciano again to place his hands

behind his back as he continued to state that I was not going to arrest him.  I then grabbed his left arm with both hands.  Mr. Picciano then turned away from me and started to walk away." (McLoughlin Afft. ¶12).  At his EBT, the defendant testified that, while he continued to have a hold on Mr. Picciano, Mr. Picciano "walked about 10, 15 feet."  (Ex. "H-2" Defendant's EBT, p. 111).   However, none of the four witnesses observed Mr. Picciano walk away from the defendant.  At his EBT, Michael Smart testified that there was never a time that Mr. Picciano started walking 10 or 15 feet away from the defendant with the defendant in tow.  (Ex. "I" Smart EBT, p. 36).  Edward Rizzo testified that Mr. Picciano took a "little step back…He certainly wasn't trying to run away."  (Ex. "J" E. Rizzo EBT, p. 13). In response to the question, "At no point he stepped away from the officer at all?"  Kyle Norcross answered, "No."  (Ex. "M" Norcross EBT, p. 19).  Matthew Rizzo testified that he thought that Mr. Picciano may have turned toward, rather than away from, the defendant when he was being handcuffed.  (Ex. "K" M. Rizzo EBT, p. 15).

If Mr. Picciano's account is believed, then the defendant lacked probable cause to arrest and exercise force against Mr. Picciano for resisting arrest.  Probable cause is lacking because the elements of the crime of resisting arrest are not met:  the arrest was not "authorized" and Mr. Picciano did not intentionally resist arrest.  *See, e.g.* Washpon v. Parr, 561 F.Supp.2d at 402.  In any event, summary judgment on the question of probable cause is not determinable as a matter of law because there is dispute as to the pertinent events and the knowledge of the defendant. *See* Weyant v. Okst, 101 F.3d at 852.

**D.**     **Even if the defendant was authorized to arrest Mr. Picciano, the force used by the defendant against Mr. Picciano was excessive under the circumstances.**

To establish liability under Section 1983, the plaintiff must prove two elements:  (1) the

defendant acted under color of state law; and (2) the plaintiff suffered a denial of his

constitutional rights or privileges as a result of the defendant's actions.  Ahern v. City of

Syracuse, 411 F.Supp.2d 132, 142 (N.D.N.Y. 2006).  "It is well-established that local law

enforcement officers who act under color of state law and who use excessive force in the

enforcement of state laws are subject to civil liability under § 1983 when their actions deprive

persons of rights guaranteed by the Constitution and laws of the United States."  Bellows v.

Dainack, 555 F.2d 1105, 1006, n. 1 (C.A.N.Y. 1977).  An "objective reasonableness" standard

applies to excessive force claims.  Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104

L.Ed 2d 443 (1989).  The defendant correctly recites the Supreme Court's holding,

"Determining whether the use of force by an officer is 'reasonable' under the Fourth Amendment

'requires a careful balancing of the nature and quality of the intrusion on the on the individual's

Fourth Amendment interests against the countervailing governmental interests at stake."

(Defendant's Memorandum of Law p. 5, *quoting* Graham v. Connor, 490 U.S. 386, 395, 109 S.

Ct. 1865, 104 L.Ed2d 443 (1989)).  Whether a particular seizure is reasonable depends on "a

careful balancing of numerous factors including the severity of the crime at issue, whether the

person is attempting to flee or resist arrest, and whether the suspect poses a threat to the safety of

the officers or others."  Ahern v. City of Syracuse, 411 F.Supp.2d at 142 (*citing* Graham v.

Connor, 490 U.S. at 396, 109 S. Ct. 1865, 104 L.Ed2d 443).   Where the parties provide

conflicting accounts as to whether the plaintiff or the defendant initiated the use of force and how

much force was used by each, "the choice between these conflicting versions are matters for the

jury and [are] not properly decided by the district court on summary judgment."  Robison v. Via,

821 F.2d 913, 924 (2d Cir. 1987) (citations omitted).  "Even if [the plaintiff] struck [the officer],

it is possible for [the plaintiff] to prevail on his excessive force claim if he is able to show [the

officer] used more force than was necessary to subdue him." <u>Curry v. City of Syracuse</u>, 316 F.

3d at 332.  "The issue of excessive force [is] for the jury, whose unique task it [is] to determine

the amount of force used, the injuries suffered and the objective reasonableness of the officer's

conduct." <u>Breen v. Garrison</u>, 169 F.3d 152, 153 (2d Cir. 1999).

      This Court recently denied summary judgment in a remarkably similar case.  In <u>Ahern</u>,

the plaintiff asserted a Section 1983 action against two Syracuse Police Officers, alleging that the

officers used excessive force in securing his arrest for violating a local skateboarding ordinance.

The parties agreed that one of the defendant officers observed the defendant skateboarding along

a street in the no-skateboarding zone and ordered the defendant to "stop."  They also agreed that

the plaintiff did not stop, and the officer forced the plaintiff to stop by riding his bicycle in front

of the plaintiff.  "The occurrence and exact sequence of the following events is unclear because

the parties' accounts vary widely; however, it is clear to the court that what was initially a mere

violation of a City quality of life ordinance escalated to a physical altercation between the

parties, which resulted in the custodial arrest of plaintiff." <u>Id.</u> at 136.  According to the

defendants, the plaintiff became aggressive and stepped back, causing the officers to infer that he

was about to flee on foot.  In response, one of the officers grabbed the plaintiff's left arm

whereupon the plaintiff "clenched his fists and puffed out his chest in a threatening manner." <u>Id.</u>

at 136-37.  At that point, the officer advised the plaintiff that he was under arrest, a struggle

ensued, and the plaintiff fell to the ground as the officers tried to handcuff him.  The plaintiff, on

the other hand, alleged that upon stopping in front of him, the officer "dismounted his bicycle

and then without provocation:   engaged in confrontational dialogue; immediately grabbed him;

and began to handcuff him." <u>Id.</u> at 137.  He further maintained that he did not turn his back to

the officer and that both officers lifted him off his feet and then pushed him to the ground with

9

his shoulder and hip absorbing the impact. He asserted that, at no time, did he struggle with the officers. On the defendants' motion for summary judgment, this Court held, "Clearly there remains an issue of fact as to the circumstances surrounding plaintiff's arrest and as to the reasonableness of the force [the officers] used to effect the arrest, which precludes the entry of summary judgment." Id. at 143, *citing* Breen v. Garrison, 169 F.3d at 153.

Here, as in Ahern, genuine issues of material fact concerning the defendant's actions make summary judgment inappropriate. For example, the parties and witnesses offer different accounts of how the defendant forced Mr. Picciano to the ground. The defendant testified that he tripped Mr. Picciano, and Mr. Picciano landed with his back on the ground. (Ex. "H-2" Defendant EBT, p. 112, 113). On the other hand, according to Mr. Picciano and at least one non-party witness, the defendant tackled Mr. Picciano to the ground, and Mr. Picciano landed facedown. (Ex. "G" Picciano EBT, p. 60; Ex. "M" Norcross EBT, p. 22).

The parties also disagree about whether the defendant limited his force tactics to the "Soft Hand Control" techniques, which have a minimal chance of causing injury. (Ex. "N", Bates No. 000001). The defendant asserts that his force "consisted merely of physically struggling with the plaintiff's arms to place his hands in handcuffs and the use of pepper spray to counteract plaintiff's continual physical resistance." (Defendant's Memorandum of Law, p. 9). At his EBT, the defendant suggested that Mr. Picciano's nosebleed was caused by Mr. Picciano digging his own fingers into his nose: "I believe he jammed his right fingers in his nose" (Ex. "H-2" Defendant's EBT, p. 115); "[I first noticed blood on Mr. Picciano's face] when he took his fingers out of his nose." (Ex. "H-2" Defendant's EBT, p. 124). By contrast, Mr. Picciano asserts that his injuries were caused by the defendant punching his face with his fist and/or the pepper spray can. When he was tackled to the ground, Mr. Picciano felt "the pepper spray in [the

defendant's] hand and his fist hitting my face." (Ex. "G" Plaintiff's EBT, p. 60). Mr. Picciano could not recall the precise number of blows he suffered, but he remembered that he was hit "A lot of times." Id. Mr. Smart observed the defendant punch Mr. Picciano "right in the face." (Ex. "I" Smart EBT, p. 18). When asked whether Mr. Picciano put his fingers up his nose, Mr. Norcross responded, "That's ridiculous. He would never – that's no." (Ex. "I" Smart EBT, p. 22). Mr. Norcross testified that either the defendant's hand or the pepper spray can "were hitting [Mr. Picciano's] face." (Ex. "M" Norcross EBT, p. 24). In the days following the incident, Edward Rizzo reported to Captain Brian Neagle that the defendant punched Mr. Picciano "in the face with the pepper spray can." (Ex. "N", Bates No. 000016). None of the four non-party witnesses recalled that Mr. Picciano put his fingers in his nose. (*See, e.g.*, Ex. "J" E. Rizzo EBT, p. 18).

Adopting Mr. Picciano's version of the facts, each of the <u>Graham</u> factors weighs in Mr. Picciano's favor. Like the plaintiff in <u>Ahern</u>, Mr. Picciano was accused of violating a city ordinance against skateboarding. The offense could not be less severe; it is "unremarkable, if not *de minimis*." <u>Ahern v. City of Syracuse</u>, 411 F.Supp.2d at 143. At no point during his encounter with the defendant did Mr. Picciano attempt to flee. (Ex. "G" Picciano EBT, p. 61; Ex. "I" Smart EBT, p. 21; Ex. "J" E. Rizzo EBT, pp. 16-17; Ex. "K" M. Rizzo EBT, p. 17; Ex. "M" Norcross EBT, p. 25). Mr. Picciano, who was sixteen years old and possessed no weapon, posed no threat to the 200-pound defendant police officer's safety. (Picciano Afft. ¶¶17, 33; Ex. "H-1" Defendant EBT, p. 13). The defendant suggests that his knowledge that "another officer (Officer Pilipczak) had been previously punched and injured by a 16 year old arrestee" somehow justified the defendant's attack on the plaintiff. (Defendant's Memorandum of Law, p. 8). Officer Pilipczak's encounter with a sixteen year-old student, who was "PUNCHING WALLS" and

warned "I WILL HIT YOU IF YOU COME AT ME" bears no resemblance to the defendant's encounter with Mr. Picciano.  (Pilipczak Afft., Ex. "A", Bates No. 000009).  Mr. Picciano made no threats and exhibited no violence during the encounter.  (See, e.g., Ex. "M" Norcross EBT p. 34).

At the very least, due to the inconsistencies between the parties' stories, the Court here cannot determine whether the plaintiff was resisting arrest and, if so, whether his resistance necessitated the force employed by the defendant.  Ahern v. City of Syracuse, 411 F.Supp.2d at 143.  Issues of fact as to the circumstances of the plaintiff's arrest and as to the reasonableness of the force used by the defendant to effect the arrest are for the jury.  See Id.; Robison v. Via, 821 F.2d at 924.

**E.**     **Mr. Picciano has alleged sufficient damages under Section 1983.**

The defendant asserts that "there is no proof whatsoever that the plaintiff suffered any demonstrable injury from this alleged contact other than a bloody nose," and his injuries "simply do not amount to a constitutional violation."  (Defendant's Memorandum of Law, p. 11).  In support of this contention, the defendant points to the decision in Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. 2005).[1]  In that case, the defendant was awarded summary judgment where, "Aside from the swelling in her wrist, Plaintiff does not allege that Defendants caused any other injuries." Id. at *4-5.

The United States Court of Appeals for the Second Circuit has held that the fact that the plaintiff does not seek medical treatment for his or injuries "is not fatal to [his or] her claim." Robison v. Via, 821 F.2d at 924.  "If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." Id.  In Robison, the plaintiff testified that the defendant state trooper "'pushed' her against the inside of the door of

her car, 'yanked' her out, 'threw [her] up against the fender,' and twisted [her] arm behind [her] back.'  Robison testified that she suffered bruises lasting a 'couple weeks.'"  <u>Id.</u>  The <u>Robison</u> court held that these types of assertions "are sufficient to prevent the summary dismissal of a § 1983 claim for excessive force." <u>Id.</u>, (*citing* <u>Bellows v. Dainack</u>, 555 F.2d at 1106 & n. 1).

   In the case at hand, as in <u>Robison</u>, the fact that Mr. Picciano's injuries were not of a permanent nature is of no consequence.   Unlike the plaintiff in <u>Rincon</u>, Mr. Picciano has alleged that the defendant caused demonstrable injuries, including a bloody nose, and bruising, and swelling and redness on his face, neck, and arms.  (Complaint ¶24; Picciano Afft. ¶47).  Mr. Norcross described Mr. Picciano's appearance:  "It was—about half his face was covered in blood and his shirt was, too.  It was definitely not a trickle, it was gushing."  (Ex. "M" Norcross EBT, p. 33).  Matthew Rizzo similarly testified, "His face was all bloody."  (Ex. "K" M. Rizzo EBT, p. 18).  Photographs of Mr. Picciano's face after the battering reveal that his injuries were not *de minimis*.

---

[1] A copy of this decision was annexed to the Defendant's Memorandum of Law as Exhibit "C."

## POINT II

## THE DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE A FACTUAL DISPUTE EXISTS AS TO WHETHER THE DEFENDANT EXERCISED EXCESSIVE FORCE AGAINST MR. PICCIANO.

The defendant claims that he is entitled to a qualified immunity defense. The United States Court of Appeals for the Second Circuit has described the qualified immunity test in the context of an excessive force claim as follows:

> Government officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. Curry v. City of Syracuse, 316 F. 3d at 334 (citation omitted).

Thus, "Overcoming qualified immunity entails a two-part process. First, a plaintiff must allege the violation of a clearly-established constitutional or statutory right. Second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right." Thomas v. Roach, 165 F.3d 137, 142-43 (2d Cir. 1999). The first part of this test is satisfied here for it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited." Mickle v. Morin, 297 F.3d 114, 53 Fed.R.Serv.3d 245 (2d Cir. 2002). "[I]t is clearly established that suspects possess a general right to have officers use only the amount of force that is 'reasonably necessary.'" Fera v. City of Albany, --- F.Supp.2d ----, 2008 WL 2949280 *6 (N.D.N.Y. 2008) [2] (citing Robison v. Via, 821 F.2d at 923-924).

---

[2] A copy of this decision is annexed hereto in accordance with the Local Rules as Exhibit "1."

Turning to the second prong of the qualified immunity analysis, "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Swift v. Mauro, 2008 WL 207793 *6 (N.D.N.Y. 2008).[3] "Although the Court must apply objective analysis to the question whether reasonable officers could have believed that their [force] was lawful in order to affect [the plaintiff's] arrest, the inquiry is still fact specific." Id. "Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." Curry v. City of Syracuse, 316 F.3d at 334 (citation omitted). See also Gomez v. City of New York, 2008 WL 3833811 *2 (S.D.N.Y. 2008) (holding that qualified immunity is not appropriate for summary judgment where "genuine issues of material fact regarding the circumstances of the arrest" remain).[4]

As in Curry, Swift, and Gomez, in this case, it is impossible to determine whether the defendant reasonably believed that his force was not excessive because the material facts are deeply contested. (See the plaintiff's Counterstatement of Facts and Point I supra).  If Mr. Picciano's version of the facts is credited, it would be "hard to conceive of how any police officer could be found to have reasonably concluded it was necessary" to tackle the plaintiff to the ground, pepper spray him, punch him in the face, and slam him against a vehicle. Swift, 2008 WL 207793 at *7.

---

[3] A copy of this decision is annexed hereto in accordance with the Local Rules as Exhibit "2."
[4] A copy of this decision is annexed hereto in accordance with the Local Rules as Exhibit "3."

### POINT III

### PUNITIVE DAMAGES ARE WARRANTED BECAUSE THE DEFENDANT ACTED WITH A RECKLESS OR CALLOUS INDIFFERENCE TO MR. PICCIANO'S FEDERALLY-PROTECTED RIGHTS.

Finally, the defendant argues that Mr. Picciano's claim for punitive damages under 42 U.S.C. §1983 must be dismissed because "there is no proof that Officer McLoughlin acted with malice or callous indifference." (Defendant's Memorandum of Law p. 19).

"[P]unitive damages may be assessed against state or local officials in their individual capacity when their actions violate section 1983." Phelan v. Torres, 2005 WL 4655382 *15 (E.D.N.Y. 2005)[5] (citing Smith v. Wade, 461 U.S. 30, 35, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 269-70, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). "Punitive damages may be awarded when the plaintiff has shown that defendant's conduct was 'motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others.'" Id. (quoting Smith v. Wade, 461 U.S. at 56). "Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiff's proof of 'sufficiently serious misconduct.'" Id. (quoting Smith v. Wade, 461 U.S. at 52). Where the plaintiff "has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages." Lazaratos v. Ruiz, 2003 WL 22283832 *9 (S.D.N.Y. 2003)[6] (citations omitted). In Lazataros, the plaintiff maintained that the defendant officer, along with several other unnamed officers, used excessive force when arresting him, including throwing him onto the ground and ripping his coat. Id. The defendant

---

[5] A copy of this decision is annexed hereto in accordance with the Local Rules as Exhibit "4."

officer claimed that he used only that force which was necessary to restrain the plaintiff.  Id. The court held, "Because of the material facts in dispute with regard to the arrest, summary judgment with respect to the excessive use of force [claim]…would be inappropriate," and "For this reason, defendants' motion must be denied with respect to punitive damages." Id. at **1, 7.

In the case at hand, as in Lazaratos, the facts are "in serious dispute."  Id. at *1. Believing Mr. Picciano's account of his encounter with the defendant leads to a finding that the defendant acted with at least reckless disregard for Mr. Picciano's Fourth Amendment rights. Mr. Picciano and the non-party witnesses testified that the defendant ordered the boys to leave City Hall even though they were not violating any laws and were just waiting for a ride home from the grandmother of one of the boys.  (Ex. "G" Picciano EBT, p. 45; Ex. "J" E. Rizzo EBT, p. 11; Ex. "K" M. Rizzo EBT, p. 12).  The defendant seemed bent on exerting his power from the moment one of the boys told him not to worry; they were leaving.  (Picciano Afft. ¶¶12-15). Edward Rizzo testified that when he and Mr. Smart were trying to explain that they were only waiting for a ride, the defendant "would repeat what [Michael Smart, Jr.] and I were saying through his facial expressions, just imitating us, you know, mocking us."  (Ex. "J" E. Rizzo EBT, p. 35).  Mr. Picciano recalled that the defendant repeated what the boys said in a condescending tone and said, "wah, wah, wah."  (Picciano Afft. ¶15).  The defendant further displayed his patent disregard for Mr. Picciano's constitutional rights when he slammed Mr. Picciano against his patrol vehicle after Mr. Picciano was in handcuffs and was admittedly compliant.  (See Plaintiff's Statement of Material Facts ¶71).   Mr. Smart testified, "After he had him against the car, he pulled him off and then pushed him back against it like forcefully like" for no reason.  (Ex. "I" Smart EBT, p. 39).

Finally, it should be noted that the defendant was involved in another incident less than

---

[6] A copy of this decision is annexed hereto in accordance with the Local Rules as Exhibit "5."

one month earlier in which he exercised force against a juvenile, Paul Metler.  (Ex. "E", Bates No. 000022; Ex. "H-2" McLoughlin EBT, p. 146, 148).  As a result of the incident involving Mr. Metler and the incident involving Mr. Picciano, Deputy Chief of Police Thomas F. Murphy issued a counseling memorandum to the defendant, requiring him to partake in a training session "to perfect [his] verbal skills when dealing with such incidents."  (Ex. "E", Bates No. 000022).

In light of these circumstances, summary judgment with respect to the plaintiff's claim for punitive damages must be denied.

## CONCLUSION

As conceded by the defendant, it is his burden to show the absence of a genuine issue as to any material fact.  (Defendant's Memorandum of Law, p. 2).  The defendant has not met this burden, and the genuine issues of material fact to be resolved by the jury are abundant.  The parties have given divergent accounts of almost every step in the sequence of events surrounding Mr. Picciano's arrest.  The credibility assessments and choices between conflicting versions of the facts cannot be resolved by the Court on a motion for summary judgment.  For the reasons set forth herein, it is respectfully submitted that the DEFENDANT'S MOTION MUST BE DENIED.

Respectfully Submitted,

GUTTMAN & WALLACE
Richard M. Wallace, Esq.
N.Y. Atty. Reg. No. 2356467
Bar Roll No. 301275