UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD J. PICCIANO,

                      Plaintiff,                     5:07-CV-0781

v.                                        (GTS/GJD)

STEPHAN McLOUGHLIN,

                      Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

GUTTMAN & WALLACE                       RICHARD M. WALLACE, ESQ.
   Counsel for Plaintiff                           HILARY E. WARD, ESQ.
411 North Tioga Street
Ithaca, New York 14850

RYAN & SMALLACOMBE, PLLC           JOHN F. MOORE, ESQ.
   Counsel for Defendant                     JAMES DALTON TAYLOR, ESQ.
100 State Street, Suite 800
Albany, New York 12207

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently before the Court, in this civil rights action filed by Richard J. Picciano

("Plaintiff") against City of Auburn Police Officer Stephan McLoughlin ("Defendant"), is

Defendant's motion for summary judgment.  (Dkt. No. 13.)  For the reasons set forth below,

Defendant's motion is granted in part and denied in part, such that Plaintiff's false arrest claim is

dismissed but his excessive force claim survives Defendant's motion for summary judgment.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint alleges that, Plaintiff's civil rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution were violated when he was taken into physical custody by Defendant on August 4, 2004, in Auburn, NY.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)[1]  More specifically, Plaintiff claims that Defendant (1) falsely arrested him for (a) skateboarding in a prohibited area in violation of City of Auburn Municipal Code § 234-16 ("Municipal Code § 234-16"), and (b) resisting arrest in violation of New York Penal Law § 205.30, and (2) used excessive force against him to effectuate the arrest.  (*Id.*)[2]  Familiarity with the particular factual allegations asserted in support of these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

B.      **Undisputed Material Facts**

The following is a general summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 13, Attach. 5 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 20 [Plf.'s Rule 7.1 Response] *and* Dkt. No. 25, Attach. 2 [Def.'s Rule 7.1 Reply].)

---

[1]      Even though Plaintiff's Complaint invokes the protections of the Fourteenth Amendment, the Court liberally construes it as invoking the protections of the Fourth Amendment.  *See* Fed. R. Civ. P. 8(e); *see also*, *infra*, Part II.B. of this Decision and Order.

[2]      Even though Plaintiff's Complaint does not expressly assert a claim of false arrest, the Court liberally construes it as asserting such a claim.  *See* Fed. R. Civ. P. 8(e) (providing that all complaints "must be construed so as to do justice").  For example, Plaintiff's Complaint implies that (1) Defendant had no probable cause to arrest Plaintiff for skateboarding given that Plaintiff was not riding his skateboard before the arrest, and (2) Defendant had no probable cause to arrest Plaintiff for resisting arrest given that Plaintiff did not pose a risk, carry a weapon, make a threat of violence, or attempt to flee.  (Dkt. No. 1, ¶¶ 17-18.)

2

Between the date of Defendant's graduation from the Central New York Police Academy, approximately December 18, 2000, and the date of the incident giving rise to this action, August 4, 2004, Defendant had made at least five arrests, and possibly more than ten arrests, for skateboarding in a prohibited area in the City of Auburn, in violation of Municipal Code § 234-16 (which had been adopted on March 28, 1991, and amended on March 18, 2004).[3] By August 4, 2004, Section 234-16 had been amended to read as follows, in pertinent part: "Riding of skateboards . . . is prohibited . . . [o]n public property unless use of a skateboard is authorized by regulation, ordinance or statute, or is otherwise authorized by the governmental agency, department or commission responsible for such property."[4]

On August 4, 2004, at approximately 8:00 p.m., Defendant, who was on duty as a patrol officer, was traveling in his patrol vehicle north on South Street, in the City of Auburn.  As Defendant approached City Hall in his patrol vehicle, he observed what appeared to be five male juveniles on the right side of the front steps of City Hall.[5]  These five juveniles were Plaintiff, Michael Smart, Edward Rizzo, Matthew Rizzo, and Kyle Norcross.[6]  At the time, at least four of

---

[3] (Dkt. No. 15, Attach 2, at 15-16, 37 [attaching pages "14," "15" and "36" of EBT of Def.]; Dkt. No. 16, at 9 [attaching page 76 of EBT of Def.]; *see also* Dkt. No. 18, Attach. 3, at 1, 4 [Municipal Code § 234, indicating that Section 234-16 adopted on March 28, 1991, and amended on March 18, 2004, by Ordinance Number 1-2004].)

[4] (Dkt. No. 18, Attach. 3, at 4 [Municipal Code § 234-16].)

[5] (*Compare* Dkt. No. 13, Attach. 5, at ¶ 23 *with* Dkt. No. 20, at ¶ 23 [admitting referenced fact].)

[6] (*Compare* Dkt. No. 13, Attach. 5, at ¶ 24 *with* Dkt. No. 20, at ¶ 24 [admitting referenced fact].)  Plaintiff was sixteen years old at the time of the arrest.  (Dkt. No. 15, Attach. 1, at 51 [Deposition of Richard Picciano].)

3

the five of these individuals, including Plaintiff, were in possession of skateboards.[7]   From a distance of approximately 200 feet away from City Hall, Defendant perceived one of the five juveniles, Plaintiff, to be skateboarding a very short distance in southerly direction along the bottom step of City Hall.[8]   Auburn City Hall was, and is, designated as a "No Skateboard Zone" under Municipal Code § 234-16–a fact of which Plaintiff was aware.[9]   Defendant pulled up his

---

[7]        More specifically, Michael Smart, Edward Rizzo and Kyle Norcross had their skateboards with them.  (Dkt. No. 16, at 31-32 [attaching pages "98" and "99" of EBT of Def.]; Dkt. No. 16, at 9 [attaching page "8" of Deposition Tr. of Michael Smart, admitting he had his skateboard with him at the time]; Dkt. No. 16, at 57 [attaching page "7" of Deposition Tr. of Edward Rizzo, admitting he had his skateboard with him at the time]; Dkt. No. 17, Attach. 1, at 9-10 [attaching pages "8" and "9" of Deposition Tr. of Kyle C.D. Norcross, admitting he had his skateboard with him at the time] Dkt. No. 20, at ¶ 20 [admitting that Plaintiff and his friends had been skateboarding on stairs near the hospital before 8 p.m. on the evening in question].)  In addition, Plaintiff had his skateboard with him.  (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 25, 26 [asserting, *inter alia*, that Plaintiff was in possession of a skateboard as Defendant approached City Hall in his vehicle] *with* Dkt. No. 20, at ¶¶ 25, 26 [admitting referenced fact].)  The parties dispute whether, as Defendant approached City Hall in his vehicle, Plaintiff was riding the skateboard, or whether Plaintiff was resting his feet on the skateboard while sitting on a step. (*Compare* Dkt. No. 13, at ¶¶ 25, 26 *with* Dkt. No. 20, at ¶¶ 25, 26.)

[8]        (Dkt. No. 16, at 31-33 [attaching pages "98" through "100" of EBT of Def.]; Dkt. No. 13, Attach. 2, at ¶ 7 [Affid. of Def.]; *compare* Dkt. No. 13, Attach. 5, at ¶ 25 *with* Dkt. No. 20, at ¶ 25 [denying only that Plaintiff was in fact skateboarding, not that Defendant *perceived* that Plaintiff was skateboarding, and not adducing any admissible record evidence establishing that Defendant did not in fact *perceive* Plaintiff to be skateboarding, or that Defendant had previously made a statement that is contradictory to his sworn testimony that he perceived Plaintiff to be skateboarding]; Dkt. No. 16, Attach. 1, at 11 [attaching page "10" of Deposition Tr. of Smart, stating that, when Defendant pulled up his vehicle, Plaintiff "was going to sit down," suggesting he had been standing before that point in time]; *cf.* Dkt. No. 17, Attach. 1, at 12 [attaching page "11" of Deposition Tr. Norcross, stating that, when Defendant pulled up in his vehicle, Plaintiff was standing with his foot on his skateboard]; Dkt. No. 16, Attach. 1, at 58-59 [attaching pages "8" and "9" of Deposition Tr. of E. Rizzo, stating that, when Defendant pulled up in his vehicle, Plaintiff "was either *standing* or sitting . . . [with] his skateboard under one foot"] [emphasis added].)

[9]        (*Compare* Dkt. No. 13, Attach. 5, at ¶ 23 *with* Dkt. No. 20, at ¶ 23 [admitting referenced fact].)

vehicle in front of Auburn City Hall.[10]  From a distance of approximately 50 feet, he observed

Plaintiff–who was not skating at that point–with one or both of his feet on a skateboard.[11]

Defendant called the group of juveniles over to him and asked them to leave the area.[12]  A

conversation ensued between Defendant and some or all of the five juveniles, including

Plaintiff.[13]  During this conversation, Plaintiff stated, "We didn't do nothing," tensed his body,

and denied having ridden his skateboard at City Hall.[14]  Defendant then advised Plaintiff that he

was under arrest.[15]

    At approximately this time, Defendant instructed Plaintiff to place his arms behind his

_____

[10]    (*Compare* Dkt. No. 13, Attach. 5, at ¶ 26 *with* Dkt. No. 20, at ¶ 30 [admitting referenced fact].)  The parties dispute whether, as Defendant pulled up to City Hall, Plaintiff was standing with one foot on the skateboard or sitting on a step with one or both feet resting on the skateboard.  (*Compare* Dkt. No. 13, at ¶¶ 25, 26 *with* Dkt. No. 20, at ¶¶ 25, 26; *cf.* Dkt. No. 1, ¶ 4 [alleging that "one foot [was] on a skateboard"].)

[11]    (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 25-26 *with* Dkt. No. 20, at ¶¶ 25-26 [admitting referenced fact]; Dkt. No. 16, at 34 [attaching page "101" of EBT of Def.].)

[12]    (*Compare* Dkt. No. 13, Attach. 5, at ¶ 30 *with* Dkt. No. 20, at ¶ 30 [admitting referenced fact].)

[13]    (*Compare* Dkt. No. 13, Attach. 5, at ¶ 31 *with* Dkt. No. 20, at ¶ 31 [willfully failing to deny the referenced facts and support those denials with specific citations to admissible record evidence, as required by Local Rule 7.1(a)(3), but rather either stating he lacked recollection of the facts asserted or not addressing the facts asserted]; *cf.* Dkt. No. 15, Attach. 1 at 48-52 [attaching pages "47" to "51" of Plf.'s Deposition Tr., stating that a conversation between various of the five juveniles and Defendant ensued after his arrival]; Dkt. No. 15, Attach. 1 at 46-47 [attaching pages "45" and "46" of Plf.'s Deposition Tr., stating that, after Defendant told Plaintiff and his friends to leave, "we told him that . . . we were just waiting for a ride and stuff
. . . . I told him we were waiting for a ride . . . ."].)

[14]    (*Id*.; *compare* Dkt. No. 13, Attach. 5, at ¶ 32 *with* Dkt. No. 20, at ¶ 32 [admitting referenced fact].)

[15]    (*Compare* Dkt. No. 13, Attach. 5, at ¶ 34 *with* Dkt. No. 20, at ¶ 34 [admitting referenced fact].)

back.[16]  Either before he was instructed to place his arms behind his back or after he was asked to

do so, Plaintiff took a step back.[17]  Plaintiff then turned his head toward Defendant, waved his

arms around, and asked why he was being arrested.[18]  Although Plaintiff initially placed one of

his arms behind his back after being instructed to place both arms behind his back, he

subsequently held the other hand out to his side, turned toward Defendant, and continued to

question Defendant about the reason for his arrest, prompting Defendant to again instruct

Plaintiff to place his hands behind his back.[19]  At the time he was arresting Plaintiff, Defendant

was aware of an assault that a fellow Auburn City Police Officer had been subjected to by a 16-

year-old individual during an arrest, on February 4, 2003.[20]

Defendant grabbed Plaintiff's arm and applied handcuffs to the hand of that arm.[21]  While

---

[16]     (*Compare* Dkt. No. 13, Attach. 5, at ¶ 34 *with* Dkt. No. 20, at ¶ 34 [admitting
referenced fact, but denying that Defendant gave such instructions "immediately after" being
told he was under arrest].)

[17]     (*Compare* Dkt. No. 13, Attach. 5, at ¶ 37 *with* Dkt. No. 20, at ¶ 37 [admitting
referenced fact, but asserting that Ed Rizzo testified that Plaintiff took a "little" step back and
was not trying to run away]; *compare* Dkt. No. 13, Attach. 5, at ¶ 36 *with* Dkt. No. 20, at ¶ 36
[willfully failing to support denial of referenced fact with citation to admissible record evidence
supporting that denial, as required by Local Rule 7.1(a)(3)].)

[18]     (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 38-39 *with* Dkt. No. 20, at ¶¶ 38-39
[admitting referenced fact]; *see also* Dkt. No. 15, Attach. 1 at 52-53 [attaching pages "51" and
"52" of Plf.'s Deposition Tr., admitting that, once Plaintiff was told he was under arrested, he
"had his hands out while [he] was . . . talking to [Defendant]," and he repeatedly asked
Defendant what he was being arrested for].)

[19]     (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 40-44, 46-48 *with* Dkt. No. 20, at ¶¶ 40-
44, 46-48 [admitting referenced fact].)

[20]     (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 2-3 *with* Dkt. No. 20, at ¶¶ 2-3 [failing to
deny referenced fact].)

[21]     (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 45, 51 *with* Dkt. No. 20, at ¶¶ 45, 51
[admitting referenced fact].)

6

doing so, Plaintiff turned toward Defendant, asked again why he was being arrested, and said the

arrest was "bullshit."[22]  In response, Defendant advised Plaintiff to stop resisting arrest.[23]

Defendant believed Plaintiff was pulling away from him in an attempt to flee.[24]  Defendant

forced Plaintiff to the ground, causing Plaintiff's face to strike the sidewalk.[25]  While on the

ground, Plaintiff continued to move his arms.[26]  Defendant perceived Plaintiff's movement as an

attempt to flee.[27]  Two of the non-party witnesses warned Plaintiff that Defendant had pepper

spray.[28]  Defendant became concerned that the other juveniles might become involved and took a

---

[22]      (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 47 *with* Dkt. No. 20, at ¶¶ 47 [admitting
referenced fact].)  The parties dispute how far Plaintiff turned around when Defendant grabbed
his arm.  (*Compare* Dkt. No. 13, Attach. 5, at ¶ 53 *with* Dkt. No. 20, at ¶ 53.)

[23]      (*Compare* Dkt. No. 13, Attach. 5, at ¶ 56 *with* Dkt. No. 20, at ¶ 56.)  Defendant
asserts, and Plaintiff denies, that Plaintiff attempted to walk away from Defendant.  (*Compare*
Dkt. No. 13, Attach. 5, at ¶ 55 *with* Dkt. No. 20, at ¶ 55.)

[24]      (Dkt. No. 16, at 44 [attaching page "111" of EBT of Def.]; Dkt. No. 13, Attach. 2,
at ¶ 13 [Affid. of Def.]; *compare* Dkt. No. 13, Attach. 5, at ¶ 57 *with* Dkt. No. 20, at ¶ 57
[denying only that Plaintiff was in fact pulling away in an attempt to flee, not that Defendant
*believed* that Plaintiff was doing so, and not adducing any admissible record evidence
establishing that Defendant did not in fact *believe* Plaintiff to be doing so, or that Defendant had
previously made a statement that is contradictory to his sworn testimony that he believed Plaintiff
Plaintiff to be doing so].)

[25]      (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 59-61 *with* Dkt. No. 20, at ¶¶ 59-61
[admitting referenced fact].)  The parties dispute whether Defendant tripped or tackled Plaintiff.
(*Compare* Dkt. No. 13, Attach. 5, at ¶ 59 *with* Dkt. No. 20, at ¶ 59.)

[26]      (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 62-63 *with* Dkt. No. 20, at ¶¶ 62-63
[admitting referenced fact].)

[27]      (*Compare* Dkt. No. 13, Attach. 5, at ¶ 63 *with* Dkt. No. 20, at ¶ 63 [failing to deny
referenced fact].)

[28]      (*Compare* Dkt. No. 13, Attach. 5, at ¶ 65 *with* Dkt. No. 20, at ¶ 65 [admitting
referenced fact].)  Defendant asserts, and Plaintiff denies, that he advised Plaintiff that he would
be sprayed with pepper spray if he did not stop resisting arrest.  (*Compare* Dkt. No. 13, Attach.
5, at ¶ 64 *with* Dkt. No. 20, at ¶ 64.)

moment to look around to confirm that they were not attempting to do so.[29]  In an attempt to avoid the effects of the pepper spray, Plaintiff covered his face with his shirt.[30]  Defendant sprayed Plaintiff's face with pepper spray.[31]  After the application of the pepper spray, Plaintiff was compliant and the arrest was completed.[32]

Defendant then escorted Plaintiff to his patrol car.[33]  Shortly thereafter, Plaintiff was taken to the Auburn Police Department by another Auburn police officer and charged with (1) skateboarding in a prohibited area in violation of Municipal Code § 234-16 and (2) resisting arrest in violation of New York Penal Law § 205.30.[34]  During the altercation between Plaintiff

---

[29]     (*Compare* Dkt. No. 13, Attach. 5, at ¶ 66 *with* Dkt. No. 20, at ¶ 66 [failing to deny referenced fact].)

[30]     (*Compare* Dkt. No. 13, Attach. 5, at ¶ 68 *with* Dkt. No. 20, at ¶ 68 [admitting referenced fact].)  Plaintiff asserts, and Defendant denies, that Defendant hit Plaintiff in the face with his fists and/or the pepper spray cannister.  (*Compare* Dkt. No. 20, at ¶ 5 [Statement of Additional Material Facts] *with* Dkt. No. 25, Attach. 2, at ¶ 5 [Def.'s Rule 7.1 Reply].)

[31]     (*Compare* Dkt. No. 13, Attach. 5, at ¶ 70 *with* Dkt. No. 20, at ¶ 70 [admitting referenced fact].) The parties dispute when the pepper spray was administered.  (*Compare* Dkt. No. 13, Attach. 5, at ¶¶ 61-64, 67, 69-70 [asserting that Defendant did not spray Plaintiff until after he was on the ground, and warned that if he did not comply with the order to stop resisting arrest, he would be sprayed] *with* Dkt. No. 20, at ¶¶ 61-64, 67, 69-70 [asserting that Defendant sprayed Plaintiff immediately after he forced Plaintiff to the ground].)

[32]     (*Compare* Dkt. No. 13, Attach. 5, at ¶ 71 *with* Dkt. No. 20, at ¶ 71 [admitting referenced fact, but denying that Plaintiff was ever noncompliant].)

[33]     Plaintiff asserts, and Defendant denies, that Defendant slammed him into his patrol car.  (*Compare* Dkt. No. 20, at ¶ 6 [Statement of Additional Material Facts] *with* Dkt. No. 25, Attach. 2, at ¶ 6.)

[34]     "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer an *authorized arrest* of himself or another person." New York Penal Law § 205.30 [emphasis added].

and Defendant, Plaintiff suffered, at the very least, a bloody nose.[35]

Familiarity with the remaining disputed material facts, as set forth in the parties' Rule 7.1 Statement, and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.

### C.    The Parties' Briefing on Defendant's Motion

Generally, in support of his motion for summary judgment, Defendant argues as follows: (1) Plaintiff's false arrest claim should be dismissed because, based on the current record, no rational factfinder could conclude that the arrest was not supported by probable cause; (2) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant used unconstitutional excessive force during the arrest; (3) based on the current record, Defendant is protected from liability as a matter of law by the doctrine of qualified immunity; and (4) Plaintiff's Complaint should be dismissed to the extent he seeks to recover punitive damages.  (*See generally* Dkt. No. 13, Attach. 6 [Def.'s Memo. of Law].)

In Plaintiff's response to Defendant's motion for summary judgment, he argues as follows: (1) Plaintiff has adduced admissible record evidence from which a rational factfinder could conclude that Defendant (a) falsely arrested him, and (b) used excessive force during his arrest; (2) Defendant is not entitled to qualified immunity; and (3) punitive damages are warranted under the circumstances.  (*See generally* Dkt. No. 20 [Plf.'s Response Memo. of Law].)

---

[35]    (*Compare* Dkt. No. 13, Attach. 5, at ¶ 77 *with* Dkt. No. 20, at ¶ 77 [admitting referenced fact].)  The parties dispute the extent of Plaintiff's injuries.  (*Compare* Dkt. No. 13, Attach. 6, at 18 [asserting that Plaintiff's injuries were *de minimus*] *with* Dkt. No. 21, at 12-13 [arguing that "a bloody nose, and bruising, and swelling and redness on (Plaintiff's) face, neck and arms . . . reveal that his injuries were not *de minimus*"]; *see also* Dkt. No. 19 [Photograph of Richard Picciano].)

In his reply, Defendant reiterates previously advanced arguments regarding Plaintiff's false arrest and excessive force claims and Defendant's entitlement to qualified immunity.  (*See generally* Dkt. No. 25, Attach. 3  [Def.'s Rule 7.1 Reply Memo. of Law].)[36]

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this

---

[36]      The Court notes that, in Defendant's Reply Memorandum of Law, Defendant points out that Plaintiff, in his Rule 7.1 Response, failed to accurately cite record evidence establishing a dispute regarding two material facts (¶¶ 10, 11), and to admit or deny six material facts (¶¶ 2, 3, 49, 54, 63, and 66).  Defendant therefore argues that these facts should be deemed admitted.  Ordinarily, a district court will deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.  *See* N.D.N.Y. L.R. 7.1(a)(3).  However, a district court need not deem admitted an asserted fact that is either a legal conclusion, a conclusory statement, or not material to the relevant dispute.  Here, the Court finds that the asserted "facts" that Defendant argues must be deemed admitted are immaterial, conclusory, or amount to legal conclusions.  For example, the "fact" that Defendant was "assaulted" by Plaintiff (Dkt. No. 13, Attach. 5, at ¶ 2) is a legal conclusion.  Moreover, the "fact" that "Matthew Rizzo's training as a military police officer" taught him that "officers are not supposed to reply to an arrestee's questions until [the arestee is] in handcuffs" is not a material fact.  For these reasons, the Court declines to deem admitted material facts asserted in any of the following paragraphs: ¶¶ 2, 3, 10, 11, 49, 54, 63, or 66.

initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id*.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[37]  Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted].  Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact.  *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

Finally, as this Court has previously observed, "It is well established that issues of credibility are *almost never* to be resolved by a court on a motion for summary judgment." *Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *4 & n.6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.)

---

[37]      As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

[emphasis in original; collecting cases].  However, "there is a *narrow exception* to this well-

established rule." *Cruz*, 2008 WL 4891165, at *4 [citation omitted].  In *Jeffreys v. City of New*

*York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for

testimony by a non-movant that possesses the following two characteristics: (1) it constitutes

almost the exclusive bstantiated by any other direct evidence); and (2) it is so lacking in

credibility (because the testimony is incomplete and/or replete with inconsistencies and

improbabilities) that, even after drawing all inferences in the light most favorable to the non-

movant, no reasonable jury could find for the non-movant.  *Cruz*, 2008 WL 4891165, at *4 & n.7

[collecting cases].  "Again, it must be remembered that the circumstances giving rise to this

exception are rare."  *Id*. & n.7 [collecting cases].

### B.      General Legal Standard Governing Plaintiff's Claims

Plaintiff bases his federal claims on 42 U.S.C. § 1983, which reads, in pertinent part, as

follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage of any State . . ., subjects or causes to be subjected,
> any citizen of the United States . . . to the deprivation of any rights,
> privileges or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action.

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but merely provides

"a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S.

386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 [1979]).

Here, Plaintiff essentially claims that Defendant violated his constitutional rights because

the arrest was not supported by probable cause and Defendant used excessive force in executing

the arrest.  "Where . . . the excessive force claim arises in the context of an arrest or investigatory

12

stop of a free citizen, it is most properly characterized as one invoking the protections of the

Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against

unreasonable . . . seizures' of the person."  *Graham*, 490 U.S. at 394-95 (citing *Tennessee v.

Garner*, 471 U.S. 1, 7-8 [1985] [noting that in a case alleging "violations of both the Fourth

Amendment and Due Process Clause . . . [the Supreme Court] analyzed the constitutionality of

the challenged application of force solely by reference to the Fourth Amendment's prohibition

against unreasonable seizures of the person, holding that the 'reasonableness' of a particular

seizure depends not only on *when* it is made, but also on *how* it is carried out"]).  Thus, "all

claims that law enforcement officers have used excessive force–deadly or not–in the course of an

arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'

approach."  *Id*. (citation omitted) (noting that "[b]ecause the Fourth Amendment provides an

explicit textual source of constitutional protection against this sort of physically intrusive

governmental conduct, that Amendment, not the more generalized notion of 'substantive due

process,' must be the guide for analyzing these claims").

## III.   ANALYSIS

### A.   Plaintiff's Claim of False Arrest

As stated above in Part I.C. of this Decision and Order, Defendant argues that Plaintiff's

false arrest claim should be dismissed because (1) Plaintiff has failed to adduce admissible

record evidence from which a rational factfinder could conclude that Plaintiff's arrest was not

authorized, and (2) based on the current record, Defendant is protected from liability as a matter

of law by the doctrine of qualified immunity.

13

The Court need not address Defendant's first argument because it accepts Defendant's second argument.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  Under New York law, the elements of a claim for false imprisonment (or false arrest) are as follows: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.  *Ahern v. City of Syracuse*, 411 F. Supp.2d 132, 146 (N.D.N.Y. 2006) (Munson, J.) [citation omitted].

Here, it is clear that Defendant intended to confine plaintiff, that Plaintiff was aware of his confinement, and that Plaintiff did not consent to the confinement.  As a result, Plaintiff easily satisfies the first three elements.[38]  The issue concerns the satisfaction of the fourth element.  Police officers are empowered to effect an arrest based on probable cause, and "the

---

[38]    The Court notes that the charges against Plaintiff were adjourned in contemplation of dismissal, and eventually dismissed upon Plaintiff's completion of a Pre-Trial Diversion Program.  The Court notes further that adjournment of charges in contemplation of dismissal ("ACD") does not preclude, as a matter of law, Plaintiff from challenging the lawfulness of his arrest.  *Weyant*, 101 F.3d at 853 (finding that favorable termination is not an element of a false arrest claim under New York law, and therefore concluding that "a person who asserts that he has been arrested without a warrant and without probable cause-a claim that does not seek to cast doubt upon judicial proceedings and is ripe upon arrest-need not insist that a prosecution be brought against him in order that he be allowed to pursue a claim for false arrest"); *Graham v. People*, 07-CV-1690, 2009 WL 1531097, at *1 n.2 (E.D.N.Y. June 2, 2009) (declining to "reach defendants' argument that Graham's acceptance of an ACD precludes him from asserting a false arrest or imprisonment claim[,] but noting that reliance on recent first department decisions for the proposition that acceptance of the ACD operates as a waiver of one's right to challenge whether there was probable cause for his arrest "may well be misplaced" given the "tension" between these decisions and "the decision of the New York Court of Appeals in *Hollender v. Trump Village Coop., Inc*., 58 N.Y.2d 420, 423 [N.Y. 1983]").

14

existence of probable cause to arrest . . . is a complete defense to an action for false arrest."
*Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001).  When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause.  *Wu v. City of New York*, 934 F. Supp. 581, 586 (S.D.N.Y. 1996).

Probable cause to arrest is present when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir.1999); *see also* N.Y. Crim. Proc. § 140.10(1)(a) (McKinney 2004).   In evaluating the probable cause determination, the court "consider[s] the facts available to the officer at the time of the arrest" and the conclusions those facts reasonably support.  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 [2d Cir. 1996]); *see also* N.Y. Crim. Proc. § 70.10(2) (McKinney 2004).  The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant.  *Whren v. United States*, 517 U.S. 806, 812-813 (1996).  "In fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination."  *Hahn v. County of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993) (Hurd, M.J.).  Finally, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "Stated differently, when faced with a claim for false arrest," this Court must "focus on the

*validity of the arrest and not on the validity of each charge." Id.*

As a result, here, the issue is rooted in whether Defendant had knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that Plaintiff had committed or was committing a crime at approximately 8:00 p.m. on August 4, 2005, including (but not limited to) either of the offenses charged. More specifically, the issue is whether it was *objectively reasonable* for Defendant to believe (i.e., whether an officer of *reasonable competence* could have believed) that he possessed such knowledge or reasonably trustworthy information. This is because the Court is passing over Defendant's first argument and focusing on his second argument, which involves the qualified immunity doctrine.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[39]  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[40]  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[41]  As the Supreme Court has explained,

---

[39]    *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[40]    *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[41]    *Accord, Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996); *see also Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) ("An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest–that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'") [internal quotations and other citations omitted].

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[42]

Here, after carefully reviewing the record, and construing it in the light most favorable to

Plaintiff, the Court finds that there is no admissible record evidence from which a rational

factfinder could conclude that it was not objectively reasonable for Defendant to believe that he

had probable cause to arrest Plaintiff for violating Municipal Code § 234-16, during the time in

question.  As explained it Part I.B. of this Decision and Order, Defendant, as he approached City

Hall in his patrol vehicle, *perceived* Plaintiff to be skateboarding a very short distance in

southerly direction along the bottom step of City Hall.  Moreover, even if this perception could

be deemed by a rational jury to have been unreasonable based on the current record, it is

undisputed that, when Defendant pulled up to City Hall in his patrol vehicle at approximately

8:00 on a summer evening, he observed Plaintiff, a male juvenile, with one or both of his feet on

a skateboard.  It is also undisputed that, after Defendant asked Plaintiff and the other juveniles to

leave the area, a conversation ensued between Defendant and (*inter alia*) Plaintiff, who tensed up

and denied skateboarding at City Hall.  Based on these last two facts alone, an officer of

*reasonable competence* could have believed that he possessed knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that Plaintiff *had violated* Municipal Code § 234-16(C), which

---

[42]      *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity
standard gives ample room for mistaken judgments by protecting all but the plainly incompetent
or those who knowingly violate the law.") [internal quotation marks and citation omitted].

prohibited the riding of skateboards at, *inter alia*, City Hall.[43]

In his response memorandum of law, Plaintiff argues that one of the reasons Defendant lacked probable cause to arrest him is that Section 234-16 of the Municipal Code authorized Defendant only to issue Plaintiff an appearance ticket under the circumstances.  (Dkt. No. 21, at 9-11 [attaching pages "4" through "6" of Plf.'s Response Memo. of Law].)  Even assuming that Section 234-16 authorized a police officer only to issue an appearance ticket under the circumstances, the Court finds, for the cogent reasons explained by United States Magistrate Judge George H. Lowe of this District in *Williams v. Schultz*, 06-CV-1104, 2008 WL 4635383, at *7-9 (N.D.N.Y. Oct. 16, 2008) (Lowe, M.J., adopted by Hurd, J.), that the fact that a police officer has violated Section 234-16(E) of the Municipal Code (or even some New York State Statute) does *not* mean that his arrest lacked probable cause under the Fourth Amendment.

More specifically, in addition to relying on the numerous cases cited by Magistrate Judge Lowe, the Court relies on the following two points of law.  First, Section 1983 provides, in pertinent part, "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution and laws" refers to United States Constitution and federal laws.  A violation of a state law, in and of itself, does not give rise to liability under 42 U.S.C. § 1983.

---

[43]      The Court notes that Municipal Code § 234-16(E) recognizes that police officers may possess "probable cause to believe a skateboard was used . . . in violation of" Municipal Code § 234-16(C).  (Dkt. No. 18, Attach. 3, at 4 [Municipal Code § 234-16].)

Second, pursuant to the *Erie* Doctrine, in an action in federal court–*except* an action governed by the Federal Constitution or by Acts of Congress–the substantive law to be applied is State substantive law, while the procedural law to be applied is federal procedural law.  Because the current action is governed by the Federal Constitution (e.g., the Fourth Amendment) and an Act of Congress (i.e., 42 U.S.C. § 1983), the substantive law to be applied is *not* the substantive law of New York State.  Even if the substantive law to be applied were the law of New York State, the law to which Plaintiff refers (i.e., City of Auburn Municipal Code § 234-16[E]) is more properly construed as being not part of New York State's *substantive* law but part of the City of Auburn's *procedural* law.[44]

For these reasons, Plaintiff's false arrest claim is dismissed.

**B.      Plaintiff's Claim of Excessive Force**

As stated above in Part I.C. of this Decision and Order, Defendant moved to dismiss Plaintiff's excessive force claim because (1) Plaintiff has failed to adduce evidence from which a rational factfinder could conclude that he was subjected to excessive force during his arrest, and (2) based on the current record, Defendant is protected from liability as a matter of law by the doctrine of qualified immunity.

Based on the current record, the Court rejects Defendant's first argument.  A "[p]olice officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without

---

[44]      *See* Auburn Municipal Code § 234-16(E) (merely reciting the procedure for executing the monetary penalty for violating Section 234-16, and for obtaining the return of the skateboard seized pursuant to a finding that probable cause exists to believe a skateboard was used, or is being used, in violation of Section 234-16).

regard to their underlying intent or motivation.'" *Maxwell v. City of New York*,

380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 [1989]).

Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates the Fourth Amendment," *Graham*, 490 U.S. at 396 (internal quotation

marks and citation omitted), the Second Circuit has "permitted a plaintiff's claim to survive

summary judgment on allegations that, during the course of an arrest, a police officer twisted her

arm, 'yanked' her, and threw her up against a car, causing only bruising." *Maxwell*, 380 F.3d at

108 (citing *Robison v. Via*, 821 F.2d 913, 924-25 [2d Cir. 1987]).

    Here, after carefully reviewing the record, and construing it in the light most favorable to

Plaintiff, the Court finds that admissible record evidence exists from which a rational factfinder

could conclude that Defendant's application of force was objectively unreasonable in light of the

facts and circumstances confronting him.  The Court makes this finding based on the undisputed

(and disputed) events described above in Part I.B. of this Decision and Order.  For example, in

his 50-h Hearing, Plaintiff testified as follows: (1) Defendant tackled him to the ground, causing

his face to strike the sidewalk; (2) Defendant punched him in the face with his fists and/or a

pepper spray cannister while he was on the ground; (3) Defendant administered pepper spray to

his face; and (4) Defendant "slammed" him into a patrol vehicle.  (Dkt. No. 14, Attach. 3

[Transcript of Plf.'s 50-h Hearing]; *see also* Dkt. No. 15, Attach. 1 [Picciano Dep. Tr.].)[45]

---

[45]    The Court notes that Plaintiff's testimony regarding the use of force during his arrest is similar to the testimony provided by the non-party witnesses.  (*See, e.g.,* Dkt. No. 16, Attach. 1, at 36-40 [Smart Dep. Tr.]; Dkt. No. 17, Attach. 2, at 22-29, 33-36 [Norcross Dep. Tr.].)

Furthermore, based on the current record, the Court also rejects Defendant's second argument, i.e., his argument that he that he is entitled to qualified immunity, although the Court concedes that this argument is a stronger one than is Defendant's former argument.  There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of Plaintiff's arrest.  *See, e.g., Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited").  Moreover, with regard to whether it was objectively reasonable for Defendant to use the alleged amount of force that he used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity."  *Mickle*, 297 F.3d at 122 (internal citations and quotation marks omitted).

Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendant *genuinely* feared being assaulted by Plaintiff (like his fellow Auburn City Police Officer had been assaulted on February 4, 2003), and even if Defendant *genuinel*y perceived Plaintiff's words and movements to constitute an attempt to flee, admissible record evidence exists from which a rational jury could conclude that those perceptions were not *objectively reasonable* under the circumstances.  As the Second Circuit has observed, it is impossible to "determine whether [Defendant] *reasonably* believed that [his] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded."  *Thomas v. Roach*, 165 F.3d 137,

144 (2d Cir. 1999) [emphasis added].[46]

For these reasons, Plaintiff's excessive force claim against Defendant survives Defendant's motion for summary judgment.

### D.    Plaintiff's Claim for Punitive Damages

Defendant argues that Plaintiff's claim for punitive damages under 42 U.S.C. § 1983 should be dismissed because "there is no proof that [Defendant] acted with malice or callous indifference." (Dkt. No. 13, Attach. 5, at 19.) "Punitive damages may be awarded when the plaintiff has shown that defendant's conduct was 'motivated by evil motive or intent, or when it involves callous indifference to federally protected rights of others.'" *Phelan ex rel. Phelan v. Torres*, 04-CV-3538, 2005 WL 4655382, at *15 (E.D.N.Y. Sept. 20, 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 [1983]). "Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiff's proof of 'sufficiently serious misconduct.'" *Torres*, 2005 WL 4655382, at *15 (quoting *Smith*, 461 U.S. at 52). Where the plaintiff "has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages." *Lazaratos v. Ruiz*, 00-CV-2221, 2003 WL 22283832, at *9 (S.D.N.Y. Sept. 30, 2003) (noting that material issues of fact as to the appropriateness of the force used by defendants in arresting plaintiff precluded summary judgment on issue that punitive damages were not available in plaintiff's civil rights action against defendants) [citations omitted].

---

[46]    *See also Robison*, 821 F.2d at 924 ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon].  Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

Here, as in *Lazaratos*, material facts remain in dispute.  In particular, factual disputes exist regarding the degree to which Plaintiff resisted arrest (and whether such resistance was lawful), and the amount of force used by Defendant to effectuate the arrest.  (*See generally* Dkt. No. 20.)

For these reasons, the Court denies Defendant's motion for summary judgment on the issue of Plaintiff's entitlement to punitive damages.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 13) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

**ORDERED** that Plaintiff's false arrest claim is **<u>DISMISSED</u> with prejudice**, but his excessive force claim survives Defendant's motion for summary judgment; and it is further

**ORDERED** that counsel are directed to appear on **<u>AUGUST 26, 2010 at 3:00 p.m.</u>** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is directed to forward a written settlement demand to defendants no later than **<u>JULY 23, 2010</u>**, and the parties are directed to engage in meaningful settlement negotiations prior to the 8/26/10 conference.

Dated: July 13, 2010
         Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge